UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| DOWAH A., | | |
| | Plaintiff, | **DECISION and ORDER** |
| v. | | |
| KILOLO KIJAKAZI,[1] Commissioner of Social Security, | | **20-CV-573F** (**consent**) |
| | Defendant. | |

_____

APPEARANCES:  LAW OFFICES OF KENNETH HILLER, PPLC
Attorneys for Plaintiff
KENNETH R. HILLER, and
ANTHONY JOHN ROONEY, of Counsel
6000 North Bailey Avenue
Suite 1A
Amherst, New York  14226


JAMES P. KENNEDY, JR.
UNITED STATES ATTORNEY
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York  14202
         and
QUINN NIBLACK DOGGETT
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
26 Federal Plaza
Room 3904
New York, New York  10278

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 6, 2021, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 17). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 8, 2021 (Dkt. 14), and by Defendant on March 9, 2021 (Dkt. 15).

**BACKGROUND**

Plaintiff Dowah A. ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on May 7, 2013, prior to attaining age 18 on November 12, 2015, for child Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges she became disabled on December 1, 2012, based on attention deficit hyperactive disorder and asthma. AR[2] at 264, 293, 297. Plaintiff's application initially was denied on September 4, 2013, AR at 117-25, and at Plaintiff's timely request, AR at 165-73, on July 9, 2015, an administrative hearing ("the first administrative hearing") was held in Buffalo, New York before Administrative Law Judge ("ALJ") Sharon Seeley ("ALJ Seeley"). AR at 45-81 ("first administrative hearing"). Appearing and testifying at the first administrative hearing were Plaintiff, represented by Kelly Laga, Esq. Plaintiff's mother ("Plaintiff's mother"), also appeared and gave testimony on Plaintiff's behalf.

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant in twelve parts on October 29, 2020 (Dkts. 10 through 10-11).

April 14, 2016, ALJ Seeley issued a decision denying Plaintiff's claim, AR at 126-51 ("First ALJ Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 200-02. On August 15, 2017, the Appeals Council vacated the First ALJ Decision and remanded the matter for consideration of Plaintiff's claims under the SSA's guidelines for both child and adult disability claims, as well as evaluation of Plaintiff's mental disorders according to regulations that became effective as of January 17, 2017, *i.e.*, while Plaintiff's application was pending. AR at 152-56. Accordingly, a second administrative hearing ("second administrative hearing"), was held on February 12, 2019, in Buffalo, New York before ALJ Timothy M. McGuan ("ALJ McGuan"). AR at 82-116. Appearing and testifying at the second administrative hearing were Plaintiff, again represented by Kelly Laga, Esq., with additional hearing testimony taken from Plaintiff's mother, as well as impartial vocational expert Tania Shullo ("the V.E.").[3]

On March 25, 2019, ALJ McGuan issued a decision ("Second ALJ Decision"), finding Plaintiff is not disabled, which Plaintiff timely appealed to the Appeals Council. AR at 254-57. On March 27, 2020, the Appeals Council denied the request for review and adopted the Second ALJ Decision that Plaintiff was not disabled, AR at 1-6, thus rendering the Second ALJ Decision the Commissioner's final decision. On May 13, 2020, Plaintiff commenced the instant action seeking review of the Second ALJ. Decision denying Plaintiff disability benefits.

---

[3] At the beginning of the second administrative hearing, ALJ McGuan observed that in April 2016, prior to the Appeals Council's remand of the instant disability benefits application, Plaintiff received a favorable decision on a separate disability benefits application "issued by someone else" after Plaintiff attained age 18. AR at 86. Because the basis for granting Plaintiff's later disability benefits application is not in the record, the court cannot determine whether the favorable decision was based on the same impairments alleged in the instant case, and the subsequent favorable decision is irrelevant to this action.

3

On January 8, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 14) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 14-1) ("Plaintiff's Memorandum").  On March 9, 2021, Defendant moved for judgment on the pleadings (Dkt. 15) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 15-1) ("Defendant's Memorandum").  Filed on March 30, 2021, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 16) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is REMANDED for further proceedings consistent with this Decision and Order.

## **FACTS**[4]

Plaintiff Dowah A. ("Plaintiff"), born November 12, 1957, was 15 years old when she initially applied for disability benefits as a disabled child based on attention deficit hyperactivity disorder ("ADHD") and asthma, and 21 years old as of the date of the second administrative hearing.  AR at 62, 264, 293, 297.  Plaintiff lives at home with her parents and four younger siblings.  AR at 100, 125-26.

It is undisputed that Plaintiff has ADHD for which Plaintiff takes medication, and learning difficulties for which she received special education services including an

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Individual Education Program ("IEP") providing for additional time for tests and assignments, time in the resource room, and placement in integrated co-teaching classes, beginning with the 2012-2013 school year.  Despite the IEP, Plaintiff had to repeat several classes in high school, yet graduated on time in June 2015 with a Regents diploma.  AR at 332-42.  Plaintiff also had some disciplinary issues commencing in seventh grade, but less frequently in high school, including disrespecting teachers and verbally and physically fighting peers, for which Plaintiff received detention and occasionally was suspended.  AR at 399-408, 500.  On March 20, 2015, in preparation for graduating high school, Plaintiff was referred for an intake session with ACCES-VR (vocational rehabilitation through New York State Department of Education"), for an intake session to address functional limitations and impediments to employment posed by Plaintiff's learning disability.  AR at 474-99.  On April 7, 2017, Plaintiff reported to ACCES-VR that she attempted an accounting course at Erie Community College ("ECC"), but transferred to Trocaire College to pursue training as a Medical Office Assistant, a goal that ACCES-VR supported, AR at 930, yet after three years, Plaintiff had not satisfactorily completed the prerequisite courses to be accepted for matriculation in any particular program of study.  AR at 94-95, 114-15.  According to Plaintiff, she left ECC because was unable to maintain the minimum grade point average which Plaintiff attributes to an inability to properly manage time and remember her assignments.  AR at 92-93.  As of August 6, 2018, ACCES-VR continued to support Plaintiff's goal to be a medical assistant, and on January 14, 2019, Plaintiff was approved by ACCES-VR for a Pell grant and Tuition Assistance Program for financial assistant toward that goal.  AR at 874.

With help provided through ACCESS-VR, Plaintiff obtained a driver's license and can drive, but does not drive by herself because she fears getting into an accident which fear Plaintiff attributes to anxiety.  AR at 89-90.  As of the date of the second administrative hearing, Plaintiff was working part time as a teacher's aide at Buffalo Speech and Hearing in a classroom for autistic children.  AR at 98-99.  Plaintiff previously worked at a day care two days a week reading stories to children and helping with the lunch room, but was terminated because Plaintiff needed constant reminders of her job assignments.  AR at 96-97.  Near the end of the second administrative hearing, ALJ McGuan queried why Plaintiff was continuing with college, with the support of ACCES-VR, when neither Plaintiff nor Plaintiff's mother believed Plaintiff would ever successfully complete any course of study for skilled work.  AR at 114-15.

Between December 19, 2013, and August 28, 2018, Plaintiff received counseling through Spectrum Human Services where Plaintiff was repeatedly diagnosed with ADHD and anxiety.  AR at 500-32.  Between October 11, 2018 and December 17, 2018, Plaintiff was treated for generalized anxiety disorder, ADHD, and panic disorder at Bestself Behavioral Health.  AR at 641-55.  Plaintiff also received treatment at Horizon Health Services between January 5, 2017 and August 27, 2018.  AR at 659-871.  In connection with her disability benefits claims, on August 20, 2018 Plaintiff underwent consultative examinations including a Pediatric Examination by Donna Miller, D.O. ("Dr. Miller"), AR at 409-12, and Child/Adolescent Psychological Evaluation by psychologist Renee Baskin, Ph.D. ("Dr. Baskin").  AR at 413-16.

**DISCUSSION**

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59.

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  Pursuant to the applicable regulations, in determining eligibility for disability benefits, the Commissioner must follow a five-step analysis for disability benefits for an adult, *i.e.*, age 18 or older, 20 C.F.R. § 416.920, *see Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (adult), and a three-step analysis for disability benefits for a child younger than age 18, 20 C.F.R. § 416.924, *see Miller v. Comm'r of Soc. Sec.*, 409 Fed.Appx. 384, 386 (2d Cir. 2010) (child).

For disability benefits as an adult, the five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting her

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

mental or physical ability to perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal to an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1 ("the Listings"), and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite her collective impairments, retains the "residual functional capacity ("RFC") to perform her past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform her PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

     For disability benefits as a child, the inquiry is similar but has only three steps including (1) whether the child is engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 416.924(b); (2) if the claimant has not been engaged in SGA, whether the child has a medically determinable impairment that is "severe," 20 C.F.R. § 416.924(c); and (3) if the child does have a severe impairment, whether such impairment meets or is medically or functionally equal to an impairment in the Listings.  With regard to the third step, where, as here, disability is alleged based on a mental impairment, to determine whether a claimant meets the "functional equivalence" of a listed impairment, the child's

functional limitations are evaluated with regard to six domains of functioning, including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(i)-(vi).  A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two or more domains of functioning, or in an "extreme" limitation in at least one domain of functioning.[6]  20 C.F.R. § 419.926a(e)(2).

In the instant case, the parties focus on the criteria for disability benefits as a child, rather than as an adult, presumably because, as ALJ McGuan acknowledged at the second administrative hearing, Plaintiff has since been found eligible for disability benefits as an adult.  AR at 86.  The undersigned accordingly limits review of the Second ALJ Decision to Plaintiff's disability benefits application as a child.

ALJ McGuan found that Plaintiff, born November 12, 1997, was, upon applying for disability benefits, in the "Adolescence (age 12 to attainment of age 18)" age group, until November 11, 2015, AR at 20, and despite some part time work, never had earnings in excess of the threshold amount and thus has not engaged in substantial gainful activity.  AR at 21.  Prior to attaining age 18, Plaintiff had the severe impairments of ADHD, obsessive-compulsive disorder ("OCD"), bipolar disorder, and generalized anxiety, but did not have an impairment or combination of impairments meeting or

---

[6] A "marked" limitation is defined as more than moderate but less than extreme, with standardized testing scores at least two but less than three standard deviations below the mean, with day-to-day functioning in domain-related activities consistent with such score, and with regard to the domain of health and physical well-being, frequent episodes of illness or exacerbation of the impairments consistent with the regulations.  20 C.F.R. § 416.926a(e)(2) and (3).

10

medically equal to an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B (20 C.F.R. §§ 416.920(d), 416.924, 416.925, and 416.926), AR at 21-32, such that Plaintiff was not disabled prior to attaining age 18. AR at 32.[7]

In support of her motion, Plaintiff argues the ALJ erred by failing to appropriately consider the special support accommodations Plaintiff received while in school, Plaintiff's Memorandum at 14-19, and failed to properly consider Plaintiff's borderline intellectual functioning as a severe impairment at step two of the three-step analysis. AR at 19-23. In opposition, Defendant argues the ALJ properly evaluated Plaintiff's ability to function in each of the six domains applicable to child disability benefits, Defendant's Memorandum at 6-10, as well as Plaintiff's borderline intellectual functioning. *Id*. at 10-13. In reply, Plaintiff repeats her arguments that the ALJ failed to properly evaluate the six domains of functioning in light of the structured environment in which Plaintiff attended school, Plaintiff's Reply at 1-2, and failed at the second step of the three-step analysis to consider Plaintiff's borderline intellectual functioning to be a severe impairment. *Id*. at 3. A thorough review of the record establishes the ALJ failed to consider Plaintiff's borderline intellectual functioning to be a severe impairment or even a nonsevere impairment, and also failed to consider the impact of the supportive

---

[7] With regard to Plaintiff's disability status as an adult, ALJ McGuan also found that since attaining age 18, Plaintiff has not developed any new impairment or impairments, AR at 32, has not had an impairment or combination of impairments meeting or medically equal to a listed impairment, AR at 32-34, and that since attaining age 18, Plaintiff has had the RFC for a full range of work at all exertional levels with the non-exertional limitations of occasionally interacting with the public, and performing simple, unskilled work. AR at 34-37. Plaintiff had no PRW and, thus, no transferrable skills, but based on her age, education, and ability to communicate in English, can perform work existing in significant numbers in the national economy including as a dishwasher, sorter, and document preparer, such that Plaintiff has not been under a disability as defined in the Act since attaining age 18 through the date of the Second ALJ Decision. AR at 37-39.

education environment provided to Plaintiff in high school through the IEP, as well as in college through ACCES-VR, on the six domains of functioning, requiring remand.

With regard to Plaintiff's asserted bordering intellectual functioning, it is undisputed that at age 15, Plaintiff underwent cognitive ability testing on December 15, 2012, five months before Plaintiff applied for disability benefits, the results of which showed full scale IQ of 61, with verbal comprehension index IQ of 71, perceptual reasoning index IQ of 65, working memory index IQ of 77, and processing speed IQ of 62.  AR at 396.  Based on these scores, Plaintiff's overall cognitive ability as a child was "within the well below average range" and Plaintiff met "the criteria of a student with an educationally handicapping condition."  AR at 397.  An IQ score in excess of 40 for a child over age 12 is current for two years. SSA Program Operations Manual System ("POMS") Disability 24515.055.D.1.  Subsequent IQ testing when Plaintiff was 20 years of age and thus an adult showed full scale IQ of 72, with verbal comprehension index IQ of 80, perceptual reasoning index IQ of 75, working memory index IQ of 74, and processing speed index IQ of 79, placing all areas of Plaintiff's functioning in the borderline range except for verbal comprehension which was in the low average range. AR at 569.

For children, "intellectual disorder" is listed as § 112.05 which, as relevant here, requires

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>     a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>     b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>     a. Understand, remember, or apply information . . .; or
>     b. Interact with others . . .; or
>     c. Concentrate, persist, or maintain pace . . .; or
>     d. Adapt or manage oneself . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 112.05B

In the instant case, it is undisputed that at age 15, Plaintiff's IQ scores met the criteria under both § 112.05B.1.a and .b such that Plaintiff would be considered disabled based on Listing § 112.05 if she also met the criteria under § 112.05B.2. Nevertheless, the ALJ did not consider Plaintiff's asserted borderline intellectual functioning a severe, or even a nonsevere, impairment at steps 2 and 3 of the three-step analysis for child disability benefits. Courts have held that erroneously failing to find an impairment is severe at step two is harmless provided the ALJ finds at least one other severe impairment and proceeds with the sequential analysis with the non-severe impairments considered at the later steps. *See, e.g.*, *Kidd v. Colvin*, 2016 WL 4267566, at * 5 (W.D.N.Y. Aug. 15. 2016) (finding ALJ's error in failing to identify all potential impairments at step two of child disability benefits three-step analysis was harmless where the ALJ found the child had other severe impairments and thoroughly discussed all the evidence in the record in the decision and considered the relevant evidence in connection with the functional equivalence domain analysis at step three). In the instant case, however, because the ALJ did not consider Plaintiff's borderline intellectual functioning as even a nonsevere impairment, the ALJ did not consider evidence of the impairment with regard to step three's functional equivalence domain analysis. This failure was not harmless error and requires remand. *See Howard v. Comm'r of*

13

*Soc.Sec.*, 203 F.Supp.3d 282, 298 (W.D.N.Y. 2016) (holding that because the ALJ's failure to consider the plaintiff's allege borderline intellectual functioning a severe impairment at step two, the court was unable to determine whether the ALJ properly assessed the combination of the plaintiff's severe and non-severe impairments such that the ALJ's error was not harmless).

Further, the "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." *Smith v. Massanari,* 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c).  Plaintiff particularly challenges the ALJ's determination that she did not have at least a marked limitation in the domains of acquiring and using information, and attending and completing tasks, arguing that although the ALJ found Plaintiff graduated high school on time with a Regents diploma, and was attending college, the ALJ ignored that Plaintiff managed to do so only because she was provided with a highly structured environment.  Plaintiffs' Memorandum at 18-19.  The structured environment included an IEP providing Plaintiff with additional time for test-taking, to complete assignments, use of the resource room, small class sizes, and allowing for tests to be read to Plaintiff because her reading ability was equivalent to fifth grade and vocabulary was equivalent to fourth grade.  Plaintiff's Memorandum at 18.  Despite such environment, Plaintiff had to repeat numerous classes in high school and as of the second administrative hearing, had been attending college for three years with assistance from ACCES-VR, including tutoring, but Plaintiff had yet to successfully

14

complete required classes to be admitted into any program of matriculation.  *See Donohue o/b/o B.G. v. Comm'r of Soc. Sec.*, 2020 WL 1530834, at * 6 (W.D.N.Y. 2014) (need for highly structured and restrictive setting for academic success established marked limitation in domain of acquiring and using information).

With regard to the domain of attending and completing tasks, this domain pertains to the child's ability "to focus and maintain . . . attention," as well as on the ability to "begin, carry through, and finish activities, including the pace at which [she] perform[s] activities and the each with which [she] change[s] them."  20 C.F.R. § 416.926a(h).  Here, despite Plaintiff's obvious struggles to focus and complete tasks on time, *see*, *e.g.*, AR at 92-93 (Plaintiff explaining at the second administrative hearing that she left ECC because was unable to maintain the minimum grade point average which Plaintiff attributes to an inability to properly manage time and remember her assignments), ALJ McGuan failed to consider that Plaintiff's struggles continued even though Plaintiff was in a highly structured environment which, after high school, included tutoring and counseling through ACCES-VR.

Further, although ALJ McGuan did consider all six domains of functioning with respect to Plaintiff's ADHD, obsessive-compulsive disorder ("OCD"), bipolar disorder, and generalized anxiety, AR at 26-32, because the ALJ did not consider any of the six domains of functioning in light of Plaintiff's borderline intellectual functioning and supporting environment, it would be speculative of the undersigned to so do.  *See Howard*, 203 F.Supp.3d at 299 (declining to assess what functional limitations, if any, the plaintiff's borderline intellectual functioning posed to the plaintiff's domains of functioning because "it would be overly speculative on the part of the Court" to do so).

Accordingly, on remand, the ALJ shall consider what impact, if any, Plaintiff's borderline intellectual functioning, whether as a severe or nonsevere, impairment poses to Plaintiff's six domains of functioning.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 14) is GRANTED; Defendant's Motion (Dkt. 12) is DENIED; the matter is REMANDED for further proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	September 27th, 2021
	Buffalo, New York